Filed 11/17/25  P. v. Quinterosmendoza CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E083878 |
| v. | (Super.Ct.No. RIF2104727) |
| LOUIS ALBERT QUINTEROSMENDOZA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Mark E. Singerton, Judge.  Affirmed as modified.

Jeanine G. Strong, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Andrew Mestman and Arlene A. Sevidal, Deputy Attorneys General, for Plaintiff and Respondent.

1

Following a jury trial, defendant and appellant Louis Albert Quinterosmendoza was convicted of simple battery (Pen. Code,[1] § 242, count 4), simple assault (§ 240, count 5) and two counts of lewd and lascivious conduct (§ 288, subd. (a), counts 6 & 7). On May 6, 2024, he was sentenced to state prison for a total term of three years, comprised of concurrent three-year terms on the lewd and lascivious conduct (counts 6 & 7) convictions and concurrent six-month terms on the battery (count 4) and assault (count 5) convictions. Defendant contends the trial court erred in excluding a recording of a conversation he had with the victim. He further contends, and the People concede, his sentence on one of the lewd and lascivious conduct convictions should be stayed. We conclude the concurrent sentences on counts 6 and 7 constitute multiple punishment proscribed by section 654. Accordingly, we modify the sentence on count 7 as set forth below and affirm the judgment in all other respects.

## I. FACTS

Defendant is the father of A.M. (born February 2007) and her two sisters. In the early hours of December 25, 2020, he drank to the point of getting drunk, grabbed A.M.'s arm, took her into his bedroom, closed the door, said things to her in an "angry way," touched her breast, attempted to touch her vagina, and asked her if she was having sex with two boys from school. After A.M. woke up, she called her mother and asked that she pick up her and her sisters. Later, A.M. revealed defendant's acts, and her mother called 911.

---

[1] Further unspecified statutory references are to the Penal Code.

Prior to the deputies arriving, A.M.'s mother recorded a pretext call between A.M. and defendant. During the call, A.M. told him she had left his place because she felt uncomfortable being around him after everything he had said; she never mentioned him physically touching her. During her interview with the deputies, A.M. disclosed defendant's recent and prior acts of touching her. In addition to the Christmas 2020 incident, in April 2020, defendant "turn[ed] [her] over and then he put his [dick or penis] in [her]" "ass" while she was asleep on the bed and her mom was at work. When she was six years old, he put his fingers inside her vagina.

## II. DISCUSSION

### A.  *Exclusion of Evidence.*

Defendant contends the trial court erred in refusing to admit the audio and video recordings of A.M.'s conversation with him in which she accused him of saying inappropriate things but not inappropriate touching.

#### 1.  Additional facts

On cross-examination, defense counsel asked A.M. about the pretext call she had made to defendant prior to the police arriving. To refresh her memory, counsel showed her a partial transcript of her interview with a deputy, which included the audio-recorded conversation she had with defendant. After reading the transcript, A.M. remembered the conversation but could not recall when it happened or talking to the deputies about it. In response to counsel's offer, she agreed that seeing the body-worn camera video of her playing the audio to the deputy would help her memory.

3

During sidebar, defense counsel requested permission to provide a transcript of and play defense exhibits 3 and 3A,[2] "a brief, roughly four-minute conversation that was audio recorded that happened between [defendant] and (Jane Doe A.M.) shortly after the incident." The court clarified that counsel was seeking to play the "body-cam footage of (Jane Doe A.M.) showing the officers an [*sic*] audio recording of herself and [defendant]." Defense counsel agreed, explaining it will help A.M. recall when the conversation took place, show the jury there was a recorded conversation between A.M. and defendant, and potentially impeach A.M.'s testimony because she did not confront him about his touching her breasts or vagina recently or in the past. The trial court indicated it would be helpful to review the transcript to determine if it contains inconsistent statements or some form of impeachment.

In response, the prosecutor noted that " about 90 percent" of the transcript is defendant's statements, which is not impeachment, "just hearsay." Regarding A.M.'s statements, the prosecution argued her testimony is the same as the recorded statements— that she does not want to be around defendant. As to refreshing her recollection about when the conversation happened, the prosecution asserted the "transcript" itself will not "accomplish that . . . aside from maybe a time stamp." The trial court agreed that if the

_____

[2] Defense exhibits 3 and 3A were never admitted into evidence, played for, or provided to the jury. The People augmented the record to include the transcript of the recorded conversation between defendant and A.M. captured by the deputy's body-camera on December 25, 2020.

We note that in a pretrial motion in limine, the prosecution requested to admit the body-cam video of the forensic interview of A.M. on December 25, 2020, if she testifies inconsistent with her statement to the deputies. The trial court denied the motion but agreed "the interview would come in . . . if [her statements] are inconsistent."

recording was mostly defendant's statements, then that is hearsay, and "this would sort of be a back doorway of getting that in." If the recording is to impeach A.M. via inconsistent statements, then defense counsel should show her the transcript and video, "directly go to those particular statements," and ask specific questions about what was and was not said. Otherwise, the court found no "particular relevance for the video," and it is hearsay.

Outside the presence of the jury, A.M. reviewed the body-cam video of her showing the deputy a recording of her conversation with defendant. During cross-examination, she explained that her mother recorded this conversation at the direction of law enforcement. She testified that during the conversation, she told defendant she was uncomfortable being around him because of everything he said; she did not mention his recent or past physical touching of her.

During redirect, A.M. testified that several months to a year after the Christmas 2020 incident, defendant "kinda" apologized to her in a restaurant parking lot. While her sisters went inside to get food, A.M. and defendant stayed in the car. When he asked her what was wrong, she "just kind of like . . . exploded[, and] . . . it just all came out. And then we talked about it, and then that was the last time I really brought it up." In light of this testimony about an apology in the car, defense counsel asked the trial court to reconsider its prior ruling and admit the recorded phone conversation between defendant and A.M. into evidence. Counsel argued, "At this point, that's impeachment. The basis for that is that (Jane Doe A. M.) has put forth to the jury that there was this one incident that happened with the apologies that happened in the car, whereas there was a

5

completely separate apology incident that happened that would tend to rebut her testimony and would go to the weight and credibility of her statements on this particular topic."

Again, the prosecutor objected, claiming this was just a way to get defendant's hearsay statements admitted. She explained there could be no confusion because defense counsel "already made clear that during that phone conversation, no mention was made of touching. And . . . based off of [A.M.'s] testimony on the stand [regarding the one-time apology] . . . she also said that that was the only time they have ever brought up the touching." Thus, the prosecutor argued the recording of the phone conversation is "simply hearsay" and "[im]proper impeachment."

The trial court indicated that it had not reviewed the recording, did not know if the apology at the restaurant parking lot is what is in the recording, and needed further foundation to show how the recording is probative. According to the court, defendant's statements in the recording are only probative if they "directly rebut something that [A.M.] says he said that's different." After reiterating that it failed to see "what the relevance of the entire recorded phone call is," the court refused to allow defense counsel to play the recording without further information.

During recross, defense counsel questioned A.M. about the recording of her conversation with defendant on December 25, 2020. She agreed that during that conversation, she told him she was upset over the things he had said but never discussed his recent or past physical touching of her. On further redirect, when asked what

defendant was apologizing for when they were sitting in the restaurant parking lot, A.M. replied, "I guess the whole touching situation."

Later during the trial, defense counsel once more requested the court revisit its ruling on the request to admit the audio recorded conversation between A.M. and defendant because it had been referenced multiple times with A.M. and the deputy, but the jury only heard "tidbits of it" and may speculate about its contents. According to counsel, under the rule of completeness, the recording would provide "content or context for the apology that was provided by [defendant] so that the jury does not have some type of misapprehension about what that apology was, and it provides context for (Jane Doe A.M.'s) statements as well regarding, um, why she didn't feel comfortable at home." The court declined to reverse its prior ruling but indicated it would look at the transcript.[3]

_____

[3] A.M.'s recorded conversation with defendant provides:
"FATHER: (Unintelligible). Okay. And then, you know, it's just you don't want to come. (Unintelligible). I was thinking you guys could open your gifts like today later on. Okay? Because, uh, yesterday, she didn't come. And then, um, that's why I know— you gotta understand something (unintelligible), okay I said a lot of things, okay I was upset because—because they always said they want to come and never come. That's why I told you what I told you. Like if that's what you guys wanted, you know, my last name too (unintelligible). Okay, I'm not saying I'm not (unintelligible). Okay? I said a lot of things because sometimes, you know, like you know (unintelligible) talked to Bonnie and Samantha, I talked to Bonnie, we go over there and was almost one. What time did we go over there? Wasn't it like 3:00 in the morning?
"DOE: 1:00 am.
"FATHER: Yeah, okay. And she's supposed to be reading and she comes without a car. Maybe—maybe (unintelligible), right?
"DOE: No. I'm not upset about that. I'm upset about the things that you told me last night.
"FATHER: Okay. I'm so—(unintelligible), I drank and I said a lot of things. Okay? So I'm sorry. Okay? You know I drank. Okay? I've been drinking a while and I drank and that's okay. Okay? Yeah. I said a lot of things and maybe that's why you're
*[footnote continued on next page]*

7

After reviewing the transcript, the trial court maintained its prior ruling.**4**  The

court found the apologies to be hearsay because they were being elicited from defense

---

hurt and everything.  Okay?  But like you said, (unintelligible) I never tried to stop you guys when you guys don't want to stay here.  'Cause I—I know sometimes you want to stay here and sometimes you don't want to stay here.  Okay?  You got to remember like when people is—is upset, they say a lot of things and I was upset yesterday because we really didn't talk about it.  We were planning our (unintelligible) you guys were going to come here at 1:00 am.  1:00 am, you guys were going to open your presents, okay?  And—and the reason I told you like if you don't want (unintelligible).  That's what I told you. (Unintelligible).  I mean sometimes I know I said a lot of things and most of the time I regret saying things, you know.

"DOE:  Well, it doesn't change the fact that I'm still not—don't want to be around you because I feel uncomfortable being around you now after everything you said.

"FATHER:  Okay.  How I said it—it was fine.  You don't want to come, that's fine mami.  Okay?  That's fine.  You don't want to come, that's fine.  You don't want to come, that's fine.  (Unintelligible) she doesn't want to come.

"DOE:  Okay.

"FATHER:  Yeah, but, yeah, but I mean—but I just say I love you and make that everything.  Okay?  And I know it because I said a lot of things and maybe that's why you're hurt.  Okay?  But I mean you (unintelligible) and everything.  Okay? (Unintelligible).  Because maybe that's why you're hurt and (unintelligible).  Because all the things that I said.  I was upset, that's it.  (Unintelligible).

"DOE:  They're in the room.

"FATHER:  And you?

"DOE:  I'm here."

**4**  Defendant asserts, "Although the [trial] court at one point agreed to review the transcript, the record does not reflect that the court did so."  Not so.  After a brief recess, the court made comments that show, albeit implicitly, that it had reviewed the transcript.  Specifically, the court described the recording as "relatively short," adding "it confirms what the parties have represented, that, in essence, [defendant], um, is apologizing, in essence, for some potential inappropriate statements that he may have made to his daughter while he was intoxicated."  Also, the court referred to the exact page and line numbers of the transcript of the conversation when quoting what defendant and A.M. said:  "Um, specifically in the recording on page two, um, lines 15 through 17, [defendant] says, 'Sometimes, I know I say a lot of things, and next time I regret—that I said that,' I'm assuming—it says, 'unintelligible,' but I am assuming it's 'I regret that I said that, you know?'  And then (Jane Doe A. M.) responds, 'Well, it doesn't change the fact that I'm still—I don't want to be around you.  Because I feel uncomfortable being around you now, after everything you said.'"

regarding defendant's statements. The court stated, "It very well may be that it could be a prior consistent statement if he, you know, took the stand and he said, Hey, all this business about me apologizing, it's being taken out of context.· I wasn't apologizing about touching her at all. I don't know where that's coming from, okay?· The only time I apologized to her was about something I said to her, you know?" The court also found this was not a rule of completeness issue as the parties were free to ask further questions about the apology given the circumstances surrounding it. In the end, the trial court ruled that while "it certainly would be easy and convenient to just let it in. . . . [I]t still has to have an evidentiary basis. I just don't see what it is."

During deliberations, the jury requested "the video recording of the initial interaction of [A.M.] and the deputies on 12/25/20." The trial court responded, "The jury may review any evidence already submitted in the case, & such evidence only."

2. Applicable legal principles

"A statement by a witness that is inconsistent with his or her trial testimony is admissible to establish the truth of the matter asserted in the statement under the conditions set forth in Evidence Code sections 1235 and 770." (*People v. Johnson* (1992) 3 Cal.4th 1183, 1219, fn. omitted.) We review a trial court's ruling on the admissibility of evidence for abuse of discretion. (*People v. Homick* (2012) 55 Cal.4th 816, 859.)

3. Analysis

Defendant contends the recorded phone conversation between A.M. and defendant should have been admitted because "[t]he fact that [she], during the pretext phone conversation with [defendant], did not accuse him of touching her inappropriately is

9

inconsistent with her trial testimony that he touched her inappropriately." He asserts this evidence was necessary because the record is replete with indications that both the jurors and the trial court found A.M. less than credible and her testimony and reporting were suspect.

Initially, defendant was charged with two counts of lewd and lascivious conduct upon a child under 14 years of age by force, violence, or duress (§ 288, subd. (b)(1), counts 1 & 2 [Christmas 2020]); sodomy upon a child under 14 years of age by force, violence, or duress (§§ 269, subd. (a)(3), 286, subds. (c) & (d), count 3 [Christmas 2020]); and oral copulation or sexual penetration of a child under 10 years of age (§ 288.7, subd. (b), count 4 [February 2012 to 2015]). At the close of the prosecution's case, the trial court granted defendant's section 1118.1 request to dismiss counts 1, 2, and 3 (based on a lack of evidence of duress or physical force), but denied the request as to count 4. As to count 4, the court noted that the evidence was unclear as to the dates on which the acts occurred, the age of A.M. when the acts occurred, and whether it was in April 2020.

On March 6, 2024, the People filed a second amended information, charging defendant with oral copulation or sexual penetration of a child under 10 years of age (§ 288.7, subd. (b), count 4 [February 2012 to 2015]); sodomy of a child under 14 years of age (§ 286, subd. (c)(1), count 5 [April 2020]); and two counts of lewd and lascivious conduct upon a child under 14 years of age (§ 288, subd. (a), counts 6 & 7 [Christmas 2020]). The second amended information reflected A.M.'s testimony alleging the sodomy occurred in April of 2020. As previously stated, the jury convicted defendant of

10

a lesser included offense of simple battery (§ 242, count 4), lesser included offense of simple assault (§ 240, count 5), and two counts of lewd and lascivious conduct (§ 288, subd. (a), counts 6 & 7).

Defendant argues the granting of his motion to dismiss and the jury's verdicts convicting him of significantly lesser charges indicate that both the trial court and the jurors "had serious doubts about A.M.'s credibility." He further claims the jury rejected the conclusion that her memory lapses were consistent with or explained by Child Sexual Abuse Accommodation Syndrome (CSAAS)[5] evidence. He points out the court's observation that A.M.'s testimony had "quite a bit of ambiguity for the Court, evidently the jury must have found there was some ambiguity because Count 1 went from life offense to misdemeanors. It's pretty significant." Also, defendant emphasizes the jury's request for a "complete readback of A.M.'s testimony," which had "numerous inconsistencies" regarding the extent of the touching, along with the timing (nine months after the December 2020 incident) of her mentioning the April 2020 incident and defendant's second apology. Thus, he argues that "[h]ad the defense been able to establish conclusively that A.M. failed to mention the alleged touching on December 25th

---

[5] CSAAS evidence refers to the common reactions of child molestation victims, including delayed reporting. (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1300.) "[E]xpert testimony on the common reactions of child molestation victims is not admissible to prove that the complaining witness has in fact been sexually abused; it is admissible to rehabilitate such witness's credibility when the defendant suggests that the child's conduct after the incident—e.g., a delay in reporting—is inconsistent with his or her testimony claiming molestation." (*Ibid*.) The expert testimony is "admissible for the limited purpose of disabusing a jury of misconceptions it might hold about how a child reacts to a molestation." (*People v. Patino* (1994) 26 Cal.App.4th 1737, 1744.)

when she spoke to [defendant] and the police, and that she failed to mention the April 2020 event at all, that evidence would have cast further doubt on her testimony." We are not persuaded.

Hearsay is an out-of-court statement "offered to prove the truth of the matter stated" and is inadmissible unless authorized by a recognized exception. (Evid. Code, § 1200, subds. (a), (b).) An out-of-court statement offered for some other purpose is not hearsay and may be admitted for that nonhearsay purpose. (*People v. Ervine* (2009) 47 Cal.4th 745, 775.) Here, the phone recording contains nonhearsay statements because defendant's statements to A.M. are admissible under Evidence Code section 1220 as a hearsay exception for admissions of a party, and A.M.'s statements to defendant are admissible if they are inconsistent with her trial testimony. (Evid. Code, § 1235.) Contrary to defendant's assertion, A.M.'s statements to defendant during the pretext phone call were not inconsistent with her trial testimony.

A prior statement is inconsistent with in-court testimony if it tends to contradict or disprove the witness's testimony, or it tends to contradict any inference or impression one may reasonably deduce from the testimony. (*People v. Cowan* (2010) 50 Cal.4th 401, 501-503 [A prior statement is inconsistent with in-court testimony if it tends to contradict or disprove the witness's testimony, or it tends to contradict any inference or impression one may reasonably deduce from the testimony].) During the phone call A.M. told defendant that she was uncomfortable being around him because of the things he had said. She never broached the subject of his touching her even though she disclosed the touching to the deputies. At trial, she acknowledged that (1) she never brought up his

12

recent or past physical touchings during their conversation, and (2) she attributed her discomfort with being around him *only* because of the things he had said. Her testimony did not contradict, nor tend to contradict, her prior statements. Accordingly, we conclude the trial court did not abuse its discretion in refusing to admit the recording of the pretext phone conversation as a prior inconsistent statement.

Alternatively, defendant contends the rule of completeness dictates that the entire conversation should have been admitted. (Evid. Code, § 356.)

Evidence Code section 356, in relevant part, provides: "Where part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by an adverse party; . . . and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it understood may also be given in evidence." "The purpose of this section is to prevent the use of selected aspects of a conversation, act, declaration, or writing, so as to create a misleading impression on the subjects addressed. [Citation.] Thus, if a party's oral admissions have been introduced in evidence, he may show other portions of the same interview or conversation, even if they are self-serving, which 'have some bearing upon, or connection with, the admission . . . in evidence.'" (*People v. Arias* (1996) 13 Cal.4th 92, 156.)

"A court[, however,] does not abuse its discretion when under Evidence Code section 356 it refuses to admit statements from a conversation or interrogation to explain statements made in a previous distinct and separate conversation. [Citation.]" (*People v. Johnson* (2010) 183 Cal.App.4th 253, 287; see *People v. Williams* (2006) 40 Cal.4th 287,

13

319 [within court's discretion not to admit statements made by defendant in first interview with detectives to explain statements made in another interview 24 hours later].)

Here, defendant sought to admit the recording of the telephone conversation between A.M. and defendant because the jury's request for this evidence indicates "it was not able to glean from A.M.'s testimony alone a complete understanding of the events." We conclude there was no justification under Evidence Code section 356 for the jury to hear almost the entirety of her police interview because the prosecution did not use "selected aspects" from that conversation to create a "misleading impression" of the remaining subject matter. (*People v. Clark* (2016) 63 Cal.4th 522, 600 [The purpose of the rule of completeness is "'to prevent the use of selected aspects of a conversation, act, declaration, or writing, so as to create a misleading impression on the subjects addressed'"].)

Quite simply, the rule of completeness cannot be used as a means to rehabilitate or impair a witness's credibility to show the remainder of the witness's statement was consistent or inconsistent with his or her testimony. (See *People v. Riccardi* (2012) 54 Cal.4th 758, 803, overruled on other grounds as stated in *People v. Rangel* (2016) 62 Cal.4th 1192, 1216 [concluding the rule of completeness did not warrant admission of an audio recording of the victim's friend's two-hour interview with the police when only selected portions of the recording were necessary to refute the defense's claim that the friend's testimony was fabricated, and when the remaining portion was unnecessary to the understanding of the otherwise admissible portion].) Instead, the jury was

specifically instructed regarding its role in determining the credibility of witnesses and the weight, if any, to be given to witness testimony. (CALCRIM No. 226.) Here, the jury was able to judge A.M.'s credibility based on her testimony and defense counsel's thorough cross-examination. During closing argument, defense counsel pointed out the inconsistencies in her testimony.

Even if we assume the trial court erred in excluding the recording of the phone conversation, we find the error harmless. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) As previously discussed, A.M.'s statement that she "fe[lt] uncomfortable being around [defendant] now after everything [he] said" would not have assisted the jury in determining her credibility since she never testified otherwise. When defense counsel questioned her about the statement, she agreed that she told defendant she was upset over the things he had said *but never* discussed his recent or past physical touching of her. During closing argument, defense counsel emphasized her failure to point to defendant's inappropriate touching as the cause of her discomfort.[6] Thus, any error in refusing to admit the phone conversation was harmless.

---

[6] "(Jane Doe A. M.) confronts [defendant], and you heard about the phone conversation because we really dissected it with [the investigating deputy].· I was trying to make sure that we understood. One conversation; two conversations.· The first conversation, she feels uncomfortable.· That's what she said.· It's not that I left because he did this.· I left because he put his penis in my butthole one time.· I left because he's been molesting me for years.· Like, that's not what she's talking about.· She said, I left because I was uncomfortable. [¶] And then the recorded phone conversation that you heard, between [defendant] and (Jane Doe A. M.)—or you heard reference to it, excuse me.· Again, she's not saying, I'm mad at you because you put your penis in my butt. I'm mad at you because when I was five, six, or seven, you fingered my vagina.· I'm mad at you.· She didn't say any of those things in a recorded phone call with her own father. [¶]

*[footnote continued on next page]*

15

*B.*	*Multiple Punishment under Section 654.*

Defendant argues, and the People concede, the punishment on either count 6 or 7 should have been stayed. We agree.

1. Additional facts

Defendant was convicted in counts 6 and 7, of lewd and lascivious acts. The trial court sentenced him to three years in state prison, comprised of concurrent low terms of three years on each count; count 6 was deemed the principal count. At sentencing, defense counsel argued the sentence for either count 6 or 7 should be stayed under section 654. In choosing to run the counts concurrently, the court found "this was all part of the same pattern of aberrant behavior from December 25th. As I've already noted, there was a grabbing of (Jane Doe A.M.)'s arm taking her to his room where he did the touching. They do not appear to be, in terms of Count 6 and 7, separate and distinct crimes predominantly independent of each other. It does not appear that [defendant] had the time to really reflect on touching, let's say for instance, from grabbing (Jane Doe A.M.)'s arm to then touching her breast.· It appears to all have happened within moments of each other.· So they do all appear to be part of the same transaction occurrence, if you will.· And so I don't find that there's separate and distinct crime, therefore, I would run Count 7 concurrent, that would be at the low term as well running concurrent with Count 6."

---

You heard her testimony, I'm uncomfortable, um, I'm upset about the things that you said.· That's what she's referencing.· Even the comment that happens in the [restaurant]'s parking lot, there's, like, no—you weren't offered any real specificity.· Okay?· You weren't offered any specificity.· Just kind of a, I've talked about everything, and then he said he was sorry."

2.  Analysis

Section 654, subdivision (a) provides:  "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision.  An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."  In other words, section 654 proscribes multiple punishment for crimes arising from a single act.  (*People v. Harrison* (1989) 48 Cal.3d 321, 335.)  This statutory protection has also been extended to proscribe punishment for multiple crimes arising from an indivisible course of conduct.  (*Ibid*.) "'Errors in the applicability of section 654 are corrected on appeal regardless of whether the point was raised by objection in the trial court or assigned as error on appeal.' [Citation.]  This is an exception to the general rule that only those claims properly raised and preserved by the parties are reviewable on appeal.  This exception is not required by the language of section 654, but rather by case law holding that a court acts in excess of its jurisdiction and imposes an unauthorized sentence when it fails to stay execution of a sentence under section 654."  (*People v. Hester* (2000) 22 Cal.4th 290, 295.)

Here, the People concede the trial court found that count 7 was based on the same transaction or occurrence as his conviction in count 6 (principal count) and imposed a concurrent sentence for count 7.  However, the imposition of a concurrent sentence is "'precluded by section 654 [citations] because the defendant is deemed to be subjected to the term of *both* sentences although they are served simultaneously.' [Citation.]  Instead, the accepted 'procedure is to sentence defendant for each count and stay execution of

17

sentence on certain of the convictions to which section 654 is applicable.'" (*People v. Jones* (2012) 54 Cal.4th 350, 353.) Accordingly, the sentence for either count 6 or 7 should be stayed instead of running concurrent as the court did here.

While the People request remand for resentencing to correct this section 654 error, defendant asks this court to order the trial court to stay the sentence on one count. An appellate court has the discretion to modify a judgment to stay sentences that should have been stayed. (See § 1260 [appellate court may reverse, affirm, or modify a judgment, or may remand for further proceedings "as may be just under the circumstances"].) In *People v. Alford* (2010) 180 Cal.App.4th 1463, 1473, the appellate court exercised its discretion to modify a judgment where a new sentencing hearing would not have changed the defendant's actual prison time, and thus the "futility and expense" of remand "militate[d] against it." The same reasoning applies here: A new sentencing hearing to stay the concurrent sentence for one of counts 6 and 7 would consume judicial resources without changing defendant's prison time. Accordingly, we will exercise our discretion to modify the judgment. Since count 6 was deemed the principal count, defendant's concurrent sentence for count 7 is stayed.

## III.  DISPOSITION

The concurrent sentence on count 7 is stayed.  The trial court is directed to forward to the Department of Corrections and Rehabilitation a new abstract of judgment that reflects the above modification.  As modified, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

MILLER
J.

RAPHAEL
J.